IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

**CATHERINE MILLER Individually and As**
**Personal Representative of Tammynesha Ramiz,**
**Stephen Ramiz and on behalf of Stephen Miller**,
**Et Al.** **PLAINTIFF**

**VERSUS** **CIVIL ACTION NO. 2:12CV00098-JMV**

**JANTRAN, INC.** **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

I. Introduction

This matter is before the court on Defendant JANTRAN, Inc.'s Motion for Summary Judgment [34] on the claims asserted by Plaintiffs in this Jones Act/unseaworthiness lawsuit. Also before the court is Defendant's Motion to Strike the Supplemental Memorandum in Opposition to the Motion for Summary Judgment [48].

First, with regard to Defendant's Motion to Strike, while movant is technically accurate in its assertions, the court finds no undue prejudice to Defendant from either the timing of the supplemental brief or the excess pages. Both parties are forewarned that in the future, if additional time or excuse from a rule is needed, they are required to make an appropriate request of the court *in advance* and not simply violate the rules with apologies offered later. Accordingly, the motion will be denied.

Next, in support of its motion for summary judgment, Defendant argues simply that because it had a strictly enforced safety policy that required employees to "wear a life jacket approved by the United States Coast Guard at all times that there is a danger of falling overboard," it may not be found liable for the unwitnessed drowning death of its un-vested

employee, Steven Miller, a deckhand with thirteen years of experience. Defendant premises its argument on 1) the Fifth Circuit's ruling in *In re Cooper/T. Smith*, 929 F.2d 1073 (5th Cir. 1991), wherein the court found that a safety policy requiring employees to wear a Coast Guard approved life vest when working was adequate even though it allowed the employee to supply his own Coast Guard approved vest, and the employee drowned while on duty and un-vested and 2) (by way of rebuttal brief) *In the matter of JANTRAN, Inc. As Owner of the M/V ROSEDALE, In A Cause of Action For Exoneration From, Or Limitation of Liability*, Civil Action No. 2:98CV00036-B-B, an unpublished decision by District Judge Neal Biggers involving the drowning death of an un-vested seaman (also employed by JANTRAN) who, while inside the confines of a vessel, took off his life jacket and failed to put it back on when he next departed the interior confines of the vessel. Defendant asserts that at issue in that case was JANTRAN's life jacket policy "which is the same today as it was then," and the court concluded there was no genuine issue but that the life jacket policy was adequate and adequately enforced by JANTRAN.

In opposition to the motion for summary judgment, Plaintiffs argue that since the content of the life vest policy at issue here is different from that at issue in *In re Cooper/T. Smith*, that case is not controlling on the issue of the adequacy of the life vest policy in this case. Plaintiffs assert the policy at issue here is inadequate because, unlike the one in *In re Cooper/T. Smith*, it is "subjective" in character. Further, Plaintiffs assert that *In re Cooper/T. Smith* did not involve a claim of negligence based on the employer's *failure to enforce* the life vest policy– a claim which is asserted here. Plaintiffs do not address the prior unpublished *JANTRAN* decision referenced above as Defendant did not raise it until its rebuttal brief. On the other hand,

Plaintiffs did raise–by way of opposition to the motion for summary judgment–a litany of other alleged acts of negligence not addressed by Defendant in its motion for summary judgment or original brief in support thereof.

Having considered the arguments of the parties and having reviewed the briefs and applicable law, the court finds, for the reasons explained below, that to the extent Defendant seeks summary judgment with regard to the issue of the adequacy of the content of life vest policy, the motion is meritorious. In all other respects, however, the motion will be denied.

## II. Factual Background

Stephen Miller was a deckhand employed by JANTRAN. Reportedly, he had thirteen years of experience in this line of work but was not able to swim without the aid of a flotation device. On the morning of September 1, 2010, Miller was serving as a deckhand and member of the crew aboard the M/V MR. TOM. The remainder of the crew consisted of Jim Kurts, the pilot of the vessel, and Larry Thomas, an additional deckhand. The vessel was involved in fleeting and tow building operations in and around the Port of Rosedale, at Rosedale Mississippi. At approximately 4:35 a.m., Kurts advised his crew that the vessel would be returning to the dock for the upcoming shift change. The shift had begun at 5:30 p.m. the previous day and was to end at 5:30 a.m that morning. According to JANTRAN, it is standard procedure for the vessel to be cleaned by the crew prior to a shift change, and when Thomas, who was headed to the bow to conduct other duties, last saw Miller, he was un-vested and mopping the floor of the galley of the M/V MR. TOM. Generally speaking, clean up involved both cleaning the galley as well as the pilot house and required exposure to the exterior of the vessel when traversing between the two locations. When the boat arrived at JANTRAN's dock at approximately 5:00 a.m., Miller was

nowhere to be found. Once it was determined that he was not aboard, a search began. During the search, Miller's life jacket was discovered aboard the interior of the vessel. Miller's unvested body was recovered five days later. An autopsy report deemed the cause of death to be drowning.

III. Summary Judgment Standard & Law

On a motion for summary judgment the district court "review[s] the evidence and any inferences to be drawn therefrom in the light most favorable to the non-moving party." *Baton Rouge Bldg. & Constr. Trades Council AFL-CIO v. Jacobs Constructors, Inc.*, 804 F.2d 879, 881 (5th Cir. 1986) (per curiam). Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See* FED.R.CIV.P. 56. A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Material facts are "facts that might affect the outcome of the suit under the governing law." *Id.*

Under the Jones Act, a defendant must bear the responsibility for any negligence, however slight, that played a part in producing the plaintiff's injury. *See Landry v. Oceanic Contractors, Inc.,* 731 F.2d 299, 302 (5th Cir. 1984). Although in Jones Act cases a "jury is entitled to make permissible inferences from unexplained events," summary judgment is nevertheless warranted when there is a complete absence of proof of an essential element of the nonmoving party's case. *See Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th

Cir.1987). The burden to prove causation in a Jones Act case is "very light" or "featherweight." *Landry v. Two R. Drilling Co.*, 511 F.2d 138, 142 (5th Cir. 1975).

The standard for negligence under general maritime law is higher. The plaintiff must demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by plaintiff, and a causal connection between defendant's conduct and the plaintiff's injury. *See Thomas v. Express Boat Co.,* 759 F.2d 444, 448 (5th Cir.1985). Furthermore, the resultant harm must be reasonably foreseeable. *Daigle v. Point Landing, Inc.,* 616 F.2d 825, 827 (5th Cir. 1980). The standard for establishing liability for unseaworthiness is thus more onerous than that under the Jones Act.

### IV. Analysis

*1. Adequacy of JANTRAN'S Life Vest Policy*

JANTRAN's life vest policy is described variously to require the wearing of a life vest as follows: "Anytime a person is working for or with JANTRAN, and the individual is aboard a vessel"; "at all times when the possibility of falling overboard exists"; and "when on the tow, in a skiff, boarding or leaving a boat or barge, or at any other time when exposed to the water."

In *In re Cooper/T. Smith*, the Fifth Circuit found that where the plaintiff offered no proof in support of her claim that a policy that required employees to wear Coast Guard approved vests *at all times* was inadequate, summary judgment was appropriate. The court explained:

> The record reveals that Cooper had a company policy requiring all employees to use United States Coast Guard approved vests when working. As long as the life jacket was Coast Guard approved, a worker could wear a jacket which either he or the company provided. Furthermore, the undisputed testimony reveals that on the day [the seaman] disappeared, he had been wearing a Coast Guard approved life vest but had voluntarily taken it off around 1:00 p.m. None of the witnesses could recall if he had redonned the vest prior to his disappearance.

5

> [Plaintiff] presented no evidence that the life jacket worn by her husband on that day or the life vests provided by Cooper were defective in any way. The undisputed testimony reveals that Cooper's life vest policy was adequate to safeguard its workers. Therefore, [Plaintiff's] claims that Cooper's life vest policy was inadequate or that the vests were defective are not supported by the evidence, and thus raise no genuine issue of fact. As there is no evidence, circumstantial or otherwise, to establish that the [vessel] was unseaworthy, or that Cooper acted negligently or in any way caused [the seaman's] death, there is a complete absence of proof of these essential elements. Therefore, summary judgment was proper.

*In re Cooper/T Smith*, 929 F.2d at 1077-78.

In the instant case, though at least one of JANTRAN's written policies requires employees to wear their vests at all times while working, the company itself asserts that the policy it enforces is the one that requires employees to wear their vests anytime there is a possible danger of falling overboard. The court finds such a policy to be different in content than the one at issue in *In re Cooper/T. Smith*.

However, as in *In re Cooper/T. Smith*, the real inquiry remains whether there is any proof offered by Plaintiff to establish that the relevant policy is inadequate. In this case, though Plaintiff argues that the policy is "subjective" (since it leaves it to the employee to determine whether a possibility of falling overboard exists), no proof is offered that such a subjective policy is inadequate. On the contrary, the proof is that Miller was an employee with thirteen years of experience on the rivers. Taking this into consideration, together with the Fifth Circuit's admonishment that there is no general obligation on Jones Act employers to either train employees to swim or to require them to wear life jackets at all times, *see Zapata Haynie Corp. v. Arthur*, 980 F.2d 287, 292 (5th Cir. 1992) ("We decline to impose a general duty on vessel owners to teach crewmembers to swim or to require crewmembers to wear flotation devices at all times."), the court finds that there is a lack of proof offered by Plaintiff sufficient to raise a

6

genuine issue over whether JANTRAN's policy regarding the wearing of life vests was adequate.[1] As discussed hereafter, the issue of whether the policy was appropriately enforced is a different matter.

    *2. Adequacy of Enforcement of JANTRAN'S Life Vest Policy*

On this issue, the court is unpersuaded that either *In re Cooper/T. Smith* or the unpublished *JANTRAN* decision mandate summary judgment. In *In re Cooper/T. Smith,* the plaintiff never even raised the issue of enforcement of the policy, and in the unpublished decision by Judge Biggers, the court specifically noted that while employees occasionally were observed by others not wearing their life vests while working, no proof was offered that the company did not enforce the policy at issue. Specifically, the court explained that the only proof offered was to the contrary: that if seen without a vest, the employee was admonished to put it on. In the instant case, however, Plaintiffs offer proof of inadequate enforcement in the form of a October 2010 company memo stating that the policy was not being enforced; testimony by the vessel captain that he, himself, would travel outside the vessel confines without his life jacket; and the testimony of a JANTRAN deckhand to the effect that the policy was not enforced. While it is accurate that Defendant disputes this evidence, resolution of such disputes is not for the court but a jury.

    *3. Other Theories of Liability*

---

[1]Although JANTRAN asserts the policy at issue here–requiring employees to wear their vests anytime there is possibility of falling overboard–is the same as was at issue in the unpublished *JANTRAN* case, this appears not to be the case. Here JANTRAN argues the relevant policy requires employees to wear their vests whenever there is the possibility of falling overboard, however, according to Judge Biggers' opinion the relevant policy required employees to wear their vests at all times while working.

7

In their response to Defendant's motion for summary judgment, Plaintiffs point out that they are also alleging a number of ways–unrelated to JANTRAN's life vest policy–in which JANTRAN was negligent and that such negligence caused or contributed to Miller's death. By way of rebuttal brief, Defendant disputes the viability of such claims on various grounds, though all for lack of causation proof. The court recognizes that Plaintiffs are asserting more than one theory of liability and that these theories are hotly contested; however, in as much as the only theory of liability addressed by JANTRAN in its motion for summary judgment and brief in support is that related to its life vest policy, the court finds the parties' dispute as to the viability of the additional claims is not properly before the court.

## V. Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted as it relates to the adequacy of the content of JANTRAN'S life vest policy, but it is denied with respect to the issue of enforcement of said policy. Defendant's Motion to Strike is denied.

**IT IS SO ORDERED.**

THIS 28th day of January, 2013.

/s/ Jane M. Virden
U. S. Magistrate Judge